UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANDREW LEE-LEO HILL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GRETCHEN WHITMER, *et al.*,<br><br>Defendants. | Case No. 20-13440<br>Honorable Matthew F. Leitman<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS [ECF NO. 25]**

**I.     Introduction**

Andrew Lee-Leo Hill, Gary Dubicke, and Ramon Caldwell—pro se prisoners proceeding *in forma pauperis*—sue the Department of Corrections (MDOC) warden John Christiansen under 42 U.S.C. § 1983, alleging violations of their First and Eighth Amendment rights.  ECF No. 1.[1] Plaintiffs allege that while they were confined at the Central Michigan Correctional Facility, they did not receive responses to health care requests until several days later and that Hill did not receive an annual medical

---

[1] On initial screening under the Prison Litigation Reform Act, the Court dismissed Governor Gretchen Whitmer and MDOC director Heidi Washington as defendants.  ECF No. 16, PageID.96-97.

checkup. ECF No. 1, PageID.1-3. They also allege that the facility was overcrowded and unsanitary and that it failed to implement adequate measures to combat COVID-19, such as social distancing during meals. *Id.*, PageID.5. And plaintiffs allege that they were denied access to the law library, denied the ability to practice their faith due to COVID-19 protocols beginning in November 2020, and fed food items reported to have labels stating that the food was carcinogenic and not safe for human consumption. *Id.*

The Honorable Matthew F. Leitman referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1). ECF No. 21. Christiansen now moves to dismiss the case. ECF No. 25. For the reasons below, the Court **RECOMMENDS** that Christiansen's motion be **GRANTED**.

II. Analysis

A.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Iqbal*, 556 U.S. at 678. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court has no duty to create a claim not spelled out in the pleadings, *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007).

A court may also consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). And "when a document is referred to in the

pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

Pleadings filed by pro se litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers, but such complaints still must plead a plausible claim for relief. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012); *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

### B.

Christiansen argues that plaintiffs have not alleged personal involvement, that the correctional facility had a reasonable response to prevent the spread of COVID-19, and that he is entitled to immunity. ECF No. 25. The Court agrees and recommends that Christiansen's motion to dismiss be granted.

### 1.

To state a cognizable claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020) (each

4

defendant must be personally involved in the unconstitutional action). Proximity to the wrongdoer does not convey responsibility. *Id.*

Plaintiffs allege that the prison facility failed to prevent the spread of COVID-19 by enforcing the proper health and safety measures, among other claims. ECF No. 1, PageID.3-6. They do not describe Christiansen's role. Instead, they allege broadly that Christiansen is the warden and "gate keeper" at the facility. *Id.*, PageID.2. But plaintiffs must allege how Christiansen, "through his…own individual actions, *personally* violated [plaintiffs'] rights." *Johnson v. Mosley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original). Blanket allegations against "defendants" generally, without saying with particularity what *each* defendant did to violate the asserted constitutional right, is not enough. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019). Interpreted liberally, the complaint alleges that warden Christiansen ran the facility and implemented the COVID-19 policies. But he may not be held liable on that basis because plaintiffs did not allege his personal involvement. *See Johnson*, 790 F.3d at 653; *Boxill*, 935 F.3d at 518.

The complaint alleges that there were inadequate prison conditions, but only Hill raises specific factual allegations. Plaintiffs allege that they were denied health care because "it takes several days to receive a

5

response" to health care requests and several more days for a "call-out." ECF No. 1, PageID.3. Hill alleges that he was placed "in Segregation for having 103 temperature without any medical attention," he did not receive an annual checkup on his birthday, and he "woke up with chest pain and…numbness in his right arm" but medical staff did not appear until three hours later. *Id.*, PageID.4. But there is no allegation that Christiansen, through his individual actions, was involved in denying plaintiffs' adequate medical care. *See Iqbal*, 556 U.S. at 676. Thus, these claims should be dismissed.

    Plaintiffs also allege that they were "denied access to the law library" and were "denied practicing one's faith by coming together and giving reverence to their God" beginning in November 2020. ECF No. 1, PageID.4. But plaintiffs again fail to state how Christiansen was personally involved in these alleged constitutional violations. Plaintiffs state that Christiansen "[knew] that it's a protected right to have access to the Courts and should not be denied due to a disease." *Id.*, PageID.2. Even so, "to state a claim for interference with access to the courts, a plaintiff must show actual injury." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (cleaned up). Plaintiffs have alleged no injury from their lack of access to the law library, so their claim should be dismissed.

Likewise, plaintiffs fail to state a First Amendment claim. To state such a claim, plaintiffs must assert that Christiansen infringed on their sincerely held religious beliefs. *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010); *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987). Plaintiffs complain that, during November 2020, they were "denied practicing one's faith coming together and giving reverence to their God." ECF No. 1, PageID.5. As noted in an earlier order, "Plaintiffs fail to identify their religion(s), allege that gathering is central to their religion(s) and sincerely held beliefs, or that they were unable to exercise their religion(s) in other ways. Plaintiffs also fail to allege the personal involvement of any of the named Defendant." ECF No. 12, PageID.73. These deficiencies remain and the First Amendment claim against Christiansen should be dismissed.

**2.**

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (cleaned up). To prevail on a deliberate indifference claim, an inmate must satisfy both an objective and subjective component. *Id.* at 834. For the objective component, plaintiffs must show that Christiansen's acts or omissions deprived them of "the

7

minimal civilized measure of life's necessities" and posed "a substantial risk of serious harm." *Id.* The subjective component requires proof that the prison official acted with deliberate indifference, meaning that the official knew of but disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010).

The test for deliberate indifference does not require "that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. But prison officials "'may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer*, 511 U.S. at 844).

For plaintiffs' concerns about COVID-19 protocols, the objective component is met here, as "[t]he COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death," particularly in a prison setting. *Id.*

8

For the subjective component, "the key inquiry is whether the [defendant] responded reasonably to this risk." *Id.* (quoting *Farmer*, 511 U.S. at 844) (cleaned up).  In *Wilson*, the Sixth Circuit evaluated whether the Bureau of Prisons (BOP) responded reasonably to the risks COVID-19 posed to inmates.  *Id.* at 840-41.  The court vacated a preliminary injunction, finding that the plaintiffs did not show a likelihood of success on the merits of their Eighth Amendment claim.  *Id.* at 843.  The BOP had reasonably responded to the risks of COVID-19 with a plan "to reduce the risk of COVID-19 spread," which included:

> implementing measures to screen inmates for the virus; isolating and quarantining inmates who may have contracted the virus; limiting inmates' movement from their residential areas and otherwise limiting group gatherings; conducting testing in accordance with CDC guidance; limiting staff and visitors and subjecting them to enhanced screening; cleaning common areas and giving inmates disinfectant to clean their cells; providing inmates continuous access to sinks, water, and soap; educating staff and inmates about ways to avoid contracting and transmitting the virus; and providing masks to inmates and various other personal protective equipment to staff.

*Id.* at 841 (cleaned up); *see also Cameron v. Bouchard*, 818 F. App'x 393, 355-96 (6th Cir. 2020) (holding that pretrial detainees challenging the COVID-19 protocols in Oakland County Jail were unlikely to prevail on the merits of an Eighth Amendment claim because the jail officials implemented preventive measures like those in *Wilson*).

9

Federal courts in Michigan have dismissed similar Eighth Amendment claims against MDOC officials when the prison's COVID-19 measures were like those implemented by the BOP in *Wilson*. *See, e.g.*, *Watson v. Washington*, No. 20-12021, 2021 WL 4480279, at *3-4 (E.D. Mich. Sept. 30, 2021); *Velez v. Emerson*, No. 1:20-cv-516, 2020 WL 4883992, at *5 (E.D. Mich. Aug. 19, 2020). As noted in those cases, the MDOC director issued memoranda (DOMs) detailing "the numerous steps undertaken by the MDOC to protect staff and prisoners from the spread of COVID-19." *Watson*, 2021 WL 4480279, at *3; *see also Sanders v. Washington*, No. 1:21-cv-510, 2022 WL 575179, at *16 (W.D. Mich. Feb. 25, 2022).

DOM 2020-30R4 was in effect during the relevant period in November 2020. ECF No. 1, PageID.3-4.[2] The many preventive measures under that policy included mask-wearing; screening criteria for entering MDOC facilities; social distancing; quarantining prisoners who were or

---

[2] In their complaint, plaintiffs cite DOM 2020-30R3 (effective May 27, 2020), but DOM 2020-30R4 superseded that memorandum on August 10, 2020 and was effective in the timeframe relevant for their allegations in November 2020. MDOC, Director's Office Memorandum 2020-30R4 (effective Aug. 10, 2020), https://www.michigan.gov/-/media/Project/Websites/corrections/assets/Folder20/DOM_2020-30R4_Final.pdf?rev=c91d7add2dce4d1f867f09856aafe266. And because DOM 2020-30R4 is a public record central to plaintiffs' claim, the Court may consider it in deciding Christiansen's motion to dismiss. *See Bassett*, 528 F.3d at 430.

suspected of being COVID-19 positive; testing prisoners taken into MDOC's custody; suspending in-person visitation; limiting group gatherings; and imposing policies for transfers and cell moves, hygiene, and food service. The DOM 2020-30R4 policies mirror those implemented by the BOP in *Wilson*, and MDOC's extensive steps to mitigate the spread of COVID-19 among inmates "demonstrate the opposite of a disregard of a serious health risk." *Hill v. Whitmer*, 471 F. Supp. 3d 803, 808 (W.D. Mich. 2020).

Even if those policies are imperfect because—for instance, social distancing is impossible in a crowded prison setting—they were still a reasonable response. *See Wilson*, 961 F.3d at 841, 843 ("[E]ven if the BOP's response has been inadequate, it has not disregarded a known risk or failed to take any steps to address the risk"). Thus, the alleged lack of social distancing does not support an inference that Christiansen "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety"; the allegations do not state an Eighth Amendment claim. *Farmer*, 511 U.S. at 837; *see Wilson*, 961 F.3d at 839-44.

Plaintiffs complain that the prison has "unsanitary condition[s]" with "mold, poor air circulation and ventilation." ECF No. 1, PageID.4. But they make no claim that the mold or poor ventilation has affected their health.

11

*Wilkey v. Adams*, No. CIV. A. 507-CV-P61-R, 2008 WL 2743939, at *7 (W.D. Ky. July 11, 2008) (plaintiff failed to state an Eighth Amendment claim when he did not allege that mold affected his health).

Likewise, plaintiffs' allegations about prison food fail to state a claim. Plaintiffs alleged that there was raw or uncooked food and that kitchen workers reported that labels said "cancer causing agents within the product" on peanut butter and "not for human consumption" on meats. ECF No. 1, PageID.5. While the complaint failed to allege that Christiansen was personally involved, plaintiffs alleged in response to an order to show cause that the issues were "addressed at the Warden forums by units block Representatives, so…Christiansen is aware of these conditions." ECF No. 13, PageID.78. But Christiansen argues that plaintiffs do not "sufficiently allege what [he] knew, when he knew it, or what actions he took or did not take to remedy the problem." ECF No. 25, PageID.132. And Christiansen asserts that "[t]hese undated, unclear, and inconsistent allegations do not sufficiently allege that [he] was aware of an objectively serious problem that he intentionally or recklessly failed to address." *Id.* The Court agrees and finds that plaintiffs fail to state a claim.

Plaintiffs allege no facts suggesting that Christiansen knowingly served them contaminated food or failed to take "reasonable measures" to

prevent others from doing so. *Farmer*, 511 U.S. at 847. And plaintiffs do not allege that the incidents caused any problems with their health or that the meals were inadequate to sustain their health. Courts have held that even "a single incident or occasional instances of spoiled food or food poisoning does not amount to an Eighth Amendment violation." *Boone v. MacLaren*, No. 2:16-CV-271, 2017 WL 3015771, at *4 (W.D. Mich. July 17, 2017) (citing cases); *Velthuyson v. Aramark Corr. Servs., Inc.*, No 2:24-cv-192, 2017 WL 236191, *2 (W.D. Mich. Jan. 19, 2017) (finding that some isolated instances of being served spoiled or cold food does not constitute a sufficiently serious deprivation to implicate the Eighth Amendment). And plaintiffs' allegation that the issues were raised at the warden's forum does not buoy their sunken claim. *See Boone*, 2017 WL 3015771, at *4 (holding that a plaintiff who complained at a warden forum meeting about uncooked food, unsanitary conditions in food service, and an incident of food poisoning failed to state a claim for deliberate indifference). Thus, plaintiffs' claim fails and should be dismissed.

### 3.

Plaintiffs did not specify whether they were suing Christiansen in his individual or official capacity. Christiansen asserts that, if plaintiffs mean to sue him in his individual capacity for money damages, he is entitled to

qualified immunity. ECF No. 25, PageID.138. Qualified immunity applies when the defendant did not violate a clearly established constitutional right. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). As discussed above, plaintiffs have failed to plead facts stating plausible claims that Christiansen violated their Eighth Amendment rights. Thus, Christiansen is entitled to qualified immunity.

If plaintiffs mean to sue Christiansen in his official capacity, their claims are barred. *See McCoy v. Michigan*, 369 Fed. App'x 646, 653-54 (6th Cir. 2010) ("the named Defendants, in their official capacities, are similarly entitled to immunity with respect to McCoy's § 1983 claim because a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office, which is no different from a suit against the State") (cleaned up).

### III. Conclusion

The Court **RECOMMENDS** that Christiansen's motion to dismiss (ECF No. 25) be **GRANTED** and that plaintiffs' complaint be **DISMISSED**.

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

Dated: October 26, 2022

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 26, 2022.

                                              s/Marlena Williams
                                              MARLENA WILLIAMS
                                              Case Manager